Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 1200 | **DATE** | 7/18/2000 |
| **CASE TITLE** | Pamela J. Alper, et al. vs. Altheimer & Gray, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to disqualify the law firm of Bickel & Brewer (149-1) is denied, as is their motion to disqualify Robert P. Cummins (174-1). Bickel & Brewer's motion to dismiss the third-party complaint (185-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 19 2000 date docketed | 218 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 7/18/2000 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAMELA J. ALPER and MICHAEL N. ALPER,<br><br>        Plaintiffs,<br><br>v.<br><br>ALTHEIMER & GRAY, an Illinois general partnership, and MYRON LIEBERMAN, individually, ROBERT L. SCHLOSSBERG, individually,<br><br>        Defendants.<br><br>ALTHEIMER & GRAY, an Illinois general partnership, and MYRON LIEBERMAN, individually, ROBERT L. SCHLOSSBERG, individually,<br><br>        Third-Party Plaintiffs,<br><br>v.<br><br>BICKEL & BREWER, a Texas partnership,<br>        Third-Party Defendant. | No. 97 C 1200<br><br>Judge Rebecca R. Pallmeyer<br><br>DOCKETED<br><br>JUL 1 9 2000 |

## MEMORANDUM OPINION AND ORDER

Defendants Altheimer & Gray and two of the firm's lawyers (hereinafter collectively "Altheimer") are charged with malpractice in connection with a 1996 transaction. Altheimer has filed a third-party complaint for contribution against Plaintiffs' current lawyers and a motion to disqualify those lawyers. In Defendants' view, Plaintiffs' lawyers are vulnerable on the third-party claim only if Defendants themselves are liable for malpractice. Accordingly, Defendants believe Plaintiffs' lawyers have a conflict of interest in this litigation and should be disqualified. Plaintiffs' lawyers have moved to dismiss the third-party action. For the reasons set forth below, the motion to dismiss is granted. The court concludes,

218

further, that the proposed third-party complaint does not create a conflict of interest for Plaintiffs' counsel and denies the motion to disqualify those attorneys.

## BACKGROUND

The factual and procedural background of this dispute is described in this court's summary judgment ruling, *see Alper v. Altheimer & Gray*, 65 F. Supp. 2d 778 (N.D. Ill. 1999)[1], and will not be reviewed in detail here. Briefly, in 1996 Plaintiffs Pamela and Michael Alper transferred their interest in Terrific Promotions, Inc. ("TPI") to Dollar Tree Stores ("DTS") for $53 million. Altheimer represented the Alpers in this transaction. Soon after the transfer, the Alpers learned that, allegedly contrary to their wishes, their attorneys had drafted documents that conveyed not only the retail business, but their wholesale business, as well, to DTS, and that Timothy Avers, a former TPI employee, had gone to work for DTS immediately after the sale. The Alpers engaged Robert Cummins and his law firm, Bickel & Brewer, to file a lawsuit against DTS and Avers. Months later, despite substantially surviving a dismissal motion, the Alpers voluntarily withdrew that suit in favor of a more expansive federal action. In November 1996, Judge Lindberg dismissed the federal claims in that lawsuit. *Terrific Promotions, Inc. v. Dollar Tree Stores*, 947 F. Supp. 1243 (N.D. Ill. 1996). The

---

[1] The court's earlier opinion includes the misleading suggestion that the court had jurisdiction because the Alpers were diverse in citizenship from the partnership of Altheimer & Gray. *Alper*, 65 F. Supp. 2d at 779. In fact, diversity jurisdiction is available here only if the Alpers are diverse in citizenship from *all* Altheimer partners. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). At the court's request, the parties to this case filed additional submissions that satisfy the court this requirement was met at the time the lawsuit was filed.

2

Alpers neither appealed from that ruling nor attempted to revive their state court action.

In this case, filed in February 1997, the Alpers allege that DTS obtained the TPI wholesale business as a result of Altheimer's malpractice. Altheimer sought summary judgment on the theory that, until the Alpers exhausted their claims against DTS and Avers, this lawsuit is premature. The court rejected that theory, *Alper*, 65 F. Supp.2d at 788. Altheimer then filed a third-party complaint against Bickel & Brewer. Altheimer alleges that Bickel & Brewer's abandonment of the Alpers' claims against DTS and Avers is itself malpractice, for which Altheimer is entitled to a contribution against any liability it may have to the Alpers arising out of the 1996 transaction. According to Defendants, the third-party claim creates a conflict of interest for Robert Cummins (who has since left Bickel & Brewer and founded his own firm), requiring that Cummins and his law firm be disqualified.[2]

## DISCUSSION

### The "Same Injury" requirement is lacking.

In Illinois, the right to contribution is codified in the Contribution Among Joint Tortfeasors Act ("Contribution Act,") which provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, . . . there is a right of contribution among them, even though judgment has not been entered against any

---

[2] Altheimer moved originally to disqualify Bickel & Brewer. Cummins' departure from that firm and formation of a new practice resulted in a second motion to disqualify. All parties agree that the arguments in support of the motion to disqualify Cummins & Cronin are identical to those in support of the original disqualification motion. For convenience, the court refers to the Third-Party Defendant simply as "Cummins."

or all of them." In this case, Altheimer is not entitled to contribution from Cummins unless both Altheimer and Cummins are subject to liability in tort arising from the same injury.

Altheimer & Gray is charged in this lawsuit with having prepared and negotiated a contract that conveyed the Alpers' interest in the TPI wholesale business and failed to include a clause prohibiting Avers from competing with that business, in violation of the Alpers' directions to the contrary. It is undisputed that the Alpers did not retain Mr. Cummins or his law firm until after the contract negotiation and closing were complete. Cummins filed suit against DTS and Avers in state court, but later withdrew it. Altheimer's third party complaint against Cummins alleges that by operation of an Illinois statute, 735 ILCS 5/13-217, the Alpers may now be barred from refiling their lawsuit against DTS and Avers.[3] Altheimer characterizes Cummins' decision to withdraw the state court suit as "negligent conduct [that] may now prevent the Alpers from obtaining relief against DTS and Avers." (Defendants' Response to Bickel & Brewer's Motion to Dismiss Third-Party Complaint ("Defs.' Response"), at 13.) Thus, in Altheimer's view, Cummins is a second cause of the same injury: "the inability of the Alpers to obtain relief for Avers' joining DTS to run a wholesale diverting business." (*Id.*)

Cummins, who was not involved in the TPI/DTS contract negotiation, argues that he could not have been a cause of the injury that generated this lawsuit. Altheimer complains

---

[3] *See Timberlake v. Illini Hosp.*, 175 Ill.2d 159, 162-63, 676 N.E.2d 634, 636 (1997) (holding that Section 13-217 barred re-filing by plaintiff who had already voluntarily dismissed action in state court and had action dismissed for lack of pendent jurisdiction in federal court).

4

that Cummins has too narrowly "focused on one theory of liability" against Altheimer. (Defendants' Submission Addressing Questions Raised by the Court Concerning the "Same Injury" and Disqualification Issues, at 2.) Specifically, Altheimer urges, Cummins focuses on the loss of the wholesale business, but ignores the Alpers' purported non-competition claim against Avers. For apparent reasons, Altheimer is eager to characterize the Alpers' thwarted desire to preclude Avers from competing as an injury separate from the Alpers' loss of their wholesale business; as noted, Cummins had nothing to do with the contract negotiation. Altheimer emphasizes that the Alpers' state court lawsuit survived a motion to dismiss and stated "proper legal claims." (*Id.* at 4.) Significantly, however, Altheimer implicitly concedes that, to the extent the withdrawn state court lawsuit alleged that the contract did not in fact convey TPI's wholesale business to DTS, that lawsuit was doomed: Altheimer contends that Alpers' malpractice claim against it "lacks any merit" because "[t]he evidence will show that the Alpers never instructed Altheimer not to transfer the wholesale business because that was not the agreement the Alpers reached with DTS." (*Id.* at 2 n.1.)[4] Altheimer's current suggestion that the Alpers' non-compete claims against Avers nevertheless would have traction has little merit. Once the Alpers had conveyed their wholesale business to DTS, they could have no protectable interest in preventing Avers from competing in such a business.

---

[4] Indeed, if Altheimer genuinely believed that DTS acted improperly, the court would expect Altheimer to attempt to implead DTS in addition to or instead of Mr. Cummins.

5

Altheimer contends that Cummins may be jointly liable for having deprived the Alpers of their ability to obtain relief against Avers. But the theory of the Alpers' claims against Altheimer is not that Altheimer deprived the Alpers of their right to enforce a valid claim -- but that Altheimer's conduct resulted in a contract that did not provide a valid claim against Avers at all. Cummins simply had no involvement in that contract.

Labeling the Alpers' common injury as the inability to obtain relief against Avers' competition presents a further problem for Altheimer in its attempt to seek contribution from Cummins: if the jury were to find that Altheimer did in fact provide the Alpers with a legal remedy for Avers' defection, then Altheimer will not be liable on that claim and will have no need for contribution from Cummins. Altheimer can be liable on that claim only if the jury agrees with the Alpers that Altheimer indeed failed to provide an adequate cause of action for Avers' defection. If Altheimer seeks contribution from Cummins for this "inability to obtain relief against Avers" injury, Altheimer will be required to argue that Cummins was negligent in failing to maintain a cause of action that was inadequate due to Altheimer's own fault. An analogous situation was presented in *Roberts v. Heilgeist*, 124 Ill. App. 3d 1082, 465 N.E. 2d 658 (2d Dist. 1984). In *Roberts*, plaintiff's original attorney sought contribution from a successor attorney for the second attorney's failure to file a lawsuit that was barred by the statute of limitations due to the original attorney's delay. The court refused to permit the first attorney to seek contribution, holding that the second one did not have a duty to pursue "such extra, and almost certainly fruitless, litigation." *Id.* at 1086, 465 N.E.2d at 661. Here, likewise, if Altheimer is liable for failure to provide the Alpers with a

6

legal remedy for Avers' departure, then Cummins cannot be said to have had a duty to pursue or maintain an action against Avers.

### Cummins is not a "Successive Tortfeasor" subject to a claim for contribution.

Cummins' conduct simply did not cause the injury of which the Alpers complain here. In urging that he may nevertheless be jointly liable, Altheimer points to the "well-established rule that a successive tortfeasor . . . is liable for contribution so long as the plaintiff had a cause of action against the successive tortfeasor at the time the plaintiff suffered an injury caused by the successive tortfeasor's conduct." (Defs.' Response, at 10.) In Altheimer's view, a successive tortfeasor "by definition is *not* liable in tort to the plaintiff at the time the initial tortfeasor causes an injury." (*Id.* (emphasis original).) In fact, however, a successive tortfeasor may well be liable in tort to the plaintiff at the time the initial tortfeasor causes an injury, as illustrated by the three cases Altheimer itself cites. *Doellman v. Warner & Swasey Co.*, 147 Ill. App.3d 842, 498 N.E.2d 690 (1st Dist. 1986) was a wrongful death action against the manufacturer and distributor of a lathe involved in a fatal workplace injury. The manufacturer and distributor were permitted to bring a third-party action against the decedent's employer for negligently equipping the lathe with a holding fixture. The employer's negligence occurred after the alleged negligent manufacture and distribution of the lathe, rendering the employer a successive tortfeasor; but both the original defendants and the employer caused injury to the plaintiff at the same time. Thus, the successive employer was subject to liability to plaintiff at the same moment that the initial tortfeasors caused injury.

7

In *Foote v. United States*, 648 F. Supp. 735 (N.D. Ill. 1986), plaintiff claimed that the naval medical center he visited failed to properly diagnose a ruptured quadriceps in his leg, which later sustained damage. The medical center sought contribution from a physician who had treated plaintiff prior to his contact with the medical center. The court permitted the contribution action to proceed because both the initial tortfeasor (the physician) and the successive tortfeasor (defendant medical center) were subject to liability for plaintiff's *single* injury – the damage to his leg – which occurred after the conduct of both the physician and the medical center. Although the physician's allegedly tortious conduct occurred prior to that of the medical center, the physician did not cause injury to the plaintiff until plaintiff's leg was damaged. At the time of that injury, the successive tortfeasor (the defendant medical center) was in fact liable in tort to the plaintiff, and was permitted to bring a claim against the initial tortfeasor, the reverse of the situation presented here.

Finally, in *People v. Brockman*, 148 Ill. 2d 260, 592 N.E.2d 1026 (1992) the State of Illinois alleged that defendants, who had operated a landfill from 1970 to 1979, were responsible for water pollution and a public nuisance. The government hired a third party, Mathes, to do clean-up work in 1985. When that work was completed, defendants filed a third party complaint against Mathes on the theory that he had negligently caused additional contaminants to be discharged into the groundwater. Mathes argued he could not be liable for contribution because the hazards the defendants were charged with occurred well before his work, but the court was unpersuaded: "[T]he proper focus of the "same injury" requirement is not the timing of the parties' conduct which created the injury, but the injury

itself." *Id.* at 269, 592 N.E. 2d at 1030. The injury allegedly caused by defendants' conduct did not occur at a specific time but continued over several years. Thus, even in *Brockman*, it cannot be said that the successive tortfeasor (Mathes) was not liable at the time the initial tortfeasors caused injury.

None of these cases is particularly instructive in the circumstances presented here, and none requires the broad conclusion for which Altheimer argues: that liability of a successive tortfeasor is determined "at the time the plaintiff suffers an injury caused by the successive tortfeasor's conduct." (Defs.' Response at 10.) That language misleadingly suggests that the plaintiff has suffered one injury caused by the initial tortfeasor's conduct and a second injury caused by the successive tortfeasor. The Contribution Act applies, however, only when two parties have caused the same one injury to the plaintiff. The Act does not provide for a contribution claim against Cummins – not because Cummins' conduct occurred after Altheimer's conduct occurred, but rather because Cummins' conduct occurred after the injury to the Alpers had occurred.

Finally, Altheimer suggests that even if the injuries caused by Altheimer and by Cummins are distinct, Altheimer nevertheless has a cause of action against Cummins for the second injury. (Defs.' Response at 16.) In support, Altheimer cites *Patton v. Carbondale Clinic, S.C.*, 161 Ill.2d 357, 641 N.E.2d 427 (1994), where a hospital sued for malpractice sought a setoff from the driver and manufacturer of a car involved in an accident with the plaintiff patient. Altheimer compares itself to a physician who gave improper preventive care, and Cummins to a physician who performed a negligent curative procedure and argues

9

that under *Patton*, the first physician (Altheimer) is entitled to contribution from the second (Cummins). (*Id.* at 17.) Yet the *Patton* court reached the opposite conclusion – that the second tortfeasor was entitled to a setoff from the first. *Patton* allowed the successive tortfeasor a setoff against the initial tortfeasor on the theory that both were liable for the second injury, that is, the negligent medical treatment. Negligent medical care is a foreseeable consequence of any injury, and a tortfeasor is liable not only for the injuries he causes directly, but for foreseeable indirect injuries as well. *Patton*, again, has little relevance and does not support Altheimer's argument that Cummins is liable for contribution for the injury involved here.

## Public policy considerations militate against a third-party malpractice claim here.

Neither party has cited an Illinois case that directly controls the issue presented here. At least one case from another jurisdiction is arguably instructive, however. In *Hughes v. Housley*, 599 P.2d 1250 (Utah 1979), plaintiff sued Housley, his former attorney, for Housley's alleged negligence in permitting a default judgment to be taken against plaintiff. Housley then filed a third-party action against Cotro-Manes, the attorney retained by Hughes to replace Housley, arguing that Cotro-Manes was negligent in failing to have the default judgment set aside. Like Altheimer here, Housley drew an analogy to cases in which a negligent party injures a plaintiff and a physician subsequently aggravates the injury through negligent treatment. The court was unpersuaded, however. Even if Cotro-Manes was negligent, his negligence did not aggravate Hughes' injury or add to the damage: "At the time that Cotro-Manes replaced Housley in representing Hughes the default had been entered and

10

the total damage complete. Cotro-Manes did not place Hughes in any worse position than he was before ...." *Id.* at 1253. Here, likewise, the injury to the Alpers allegedly caused by Altheimer was complete, at the latest, when Avers went to work for DTS on January 31, 1996. Cummins' decisions with respect to the Alpers' litigation could not have aggravated that injury.

The *Hughes* court also cited policy concerns about imposition of a duty on successor counsel in favor of his predecessor: "To impose such a duty would be to subject the second attorney to potential conflicts of interest in trying to serve two masters." *Id.* at 1254. At least one Illinois court has recognized "substantial merit" in the viewpoint that suits by a former lawyer against a successor contravene public policy. *See Roberts*, 124 Ill. App.3d at 1087, 465 N.E.2d at 662. Altheimer urges that other Illinois courts have discarded any public policy concern about such lawsuits, but the cases Altheimer cites, *Brown-Seydel v. Mehta*, 281 Ill. App. 3d 365, 367-68, 666 N.E.2d 800, 802 (1st Dist. 1996) and *Goran v. Glieberman*, 276 Ill. App. 3d 590, 596-97, 659 N.E.2d 56, 61 (1st Dist. 1995) follow an Illinois Supreme Court pronouncement that "an attorney may seek contribution from a subsequent attorney *where both attorneys worked on the same underlying cause.*" *Faier v. Ambrose & Cushing, P.C.*, 154 Ill.2d 384, 386-87, 609 N.E.2d 315, 316 (1993) (emphasis supplied.) Both *Goran* and *Brown-Seydel* presented circumstances where the successor attorney was hired by the plaintiff to proceed with the same case originally pursued by the initial attorney.

The argument against permitting a third-party claim against a successor attorney is especially strong in situations like this one, where the successor attorney's alleged negligence

11

arises out of his failure to seek recovery from another party whom the initial attorney may sue directly. By filing a third-party action against Cummins, Altheimer is indirectly alleging that Avers and DTS are potentially liable to the Alpers. Whether Altheimer is right or wrong, it is not harmed by this court's dismissal of the third-party action against Cummins. Altheimer remains free to demonstrate to the jury that Avers and DTS are partially or completely responsible for the Alpers' alleged injuries. Altheimer is free to present this theory to the jury whether or not Altheimer chooses to name DTS and Avers as third-party Defendants.

## CONCLUSION

Altheimer is not entitled to contribution from Cummins. The injuries that Altheimer allegedly caused to the Alpers is distinct from the injury that Cummins allegedly caused by failing to pursue a cause of action against DTS and Avers. Cummins is not liable for contribution for an injury that was complete prior to any conduct on his part. Further, under Altheimer's theory, Cummins would face liability only if the jury were to determine that the deal, as negotiated by Altheimer, did not in fact convey the wholesale business to DTS. If the jury so finds, it will also find Altheimer not guilty and Altheimer will have no need of contribution. Thus, Cummins does not have a conflict of interest and is not disqualified from representing the Alpers.

Defendants' motion to disqualify the law firm of Bickel & Brewer (149-1) is denied, as is their motion to disqualify Robert P. Cummins (174-1). Bickel & Brewer's motion to dismiss the third-party complaint (185-1) is granted.

ENTER:

July 18, 2000

Rebecca R. Pallmeyer
United States District Judge